UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES – GENERAL**                                    'O'

| Case No. | 2:19-CR-00229-CAS - 1 | Date | October 7, 2020 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Kevin Butler, Not Present<br>Patrick Castandeda, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| RICKEY LEWIS | NOT | X | | JULIA DEIXLER<br>ADAM OLIN | NOT<br>NOT | X<br>X | |

| Proceedings: | (IN CHAMBERS) - DEFENDANT'S MOTION TO EXCLUDE PRETRIAL AND IN-COURT IDENTIFICATIONS (Dkt. 51, filed September 4, 2020) |
|---|---|

## I. INTRODUCTION

On April 6, 2019, a grand jury indicted defendant Rickey Lewis on three counts of bank robbery and one count of attempted bank robbery pursuant to 18 U.S.C. § 2113(a). Dkt. 10 ("Indictment") at 1–3. The government alleges that, over the course of five days in January 2019, Lewis robbed or attempted to rob four banks in Los Angeles County. Id. At the time of the alleged bank robberies and attempt at issue here, Lewis was on supervised release after serving a 151-month prison sentence for six previous counts of bank robbery and attempted bank robbery that took place in 2005. Dkt. 1 ("Complaint" or "Compl.") at 3–23; Indictment at 1–3. The government alleges that, as with the 2005 bank robberies, Lewis entered each bank alone, demanded money and threatened to shoot bank tellers and bystanders, but never displayed a weapon. Id. Lewis entered not guilty pleas to all counts as charged. See Dkt. 16. Trial is set before this Court for November 12, 2019. See Dkt. 29.

Defendant filed a motion to exclude pretrial and in-court identifications on September 4, 2020. See Dkt. 51 ("Mot."). The government filed an opposition on September 18, 2020, see Dkt. 52 ("Opp."), but no reply was filed. On October 6, 2020, the Court held a hearing on the motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES – GENERAL**               'O'

## II. BACKGROUND

### A. Robbery of JP Morgan Chase in Gardena, January 22, 2019

On January 22, 2019, the West Redondo Beach Boulevard branch of JP Morgan Chase Bank, in Gardena, California, was robbed. Mot. at 1; Dkt. 51-1, Exhibit A to Mot. ("Ex. A"), at 2.[1]  The suspect approached Y.W., a bank teller, at her window. Ex. A at 2.  The suspect demanded money and said he "really will start shooting." Id. at 8.  Y.W. gave the suspect $1,000, and noticed the suspect had clear tape on his fingertips, presumably to avoid leaving fingerprints. Id. at 8–9.  The suspect fled soon thereafter. Id. at 9.  M.C., another bank teller, was assisting a customer when he overheard the suspect telling Y.W. to "quit playing." Id. at 5.  M.C. believed the suspect was hurrying Y.W. Id.

The Federal Bureau of Investigation ("FBI") interviewed witnesses the day of the robbery. Id. at 6, 8.  Y.W. and M.C. gave descriptions of the suspect.[2]  Y.W. described the suspect as a "black male adult in his late 50s to early 60s, 6' 2" to 6' 3", slim build, wearing black sunglasses, a beige chauffeur's hat or kongol hat, and white long sleeve shirt with a collar." Id. at 9.  Y.W. made no mention of facial hair. Id.  M.C., though, described the suspect as a "clean shaven." Id. at 4.  The remainder of M.C.'s description closely paralleled Y.W.'s. Id.

On January 23, 2019, FBI Special Agent Daniel Clift separately presented Y.W. and M.C. with a "six pack" photograph array. Id. at 10, 17.  In the array, defendant's photograph was number four. Id. at 11.  All those pictured were African American men, with no head hair and of roughly the same age. Id.  Each has slight facial hair, except defendant, who appears clean-shaven. Id.; Mot. at 1.  No one in the array has a full beard or mustache. Ex. A at 11.

Before presenting the array, Special Agent Clift read the witnesses a standard FBI admonition, which states, in part, that the "group of photographs may or may not include the photograph of the person who committed the crime," and that the witness "should not feel compelled nor [] required to make an identification." Id. at 10, 17.  The admonition also cautions that "[t]hese photographs you are viewing may or may not depict the hair style or the facial hair similar to that of the person who committed the crime, since hair styles, beards, and mustaches are easily changed." Id.

Y.W. identified defendant, stating he was "the only one who stands out," and that "number four definitely looks the most like the bank robber yesterday." Id. at 17, 19.  She qualified that

---

[1] All exhibits referred to herein accompany defendant's motion.

[2] The FBI interviewed a third witness, T.S., who was a greeter at the branch, but the FBI did not ask T.S. to make any identification. Ex. A at 20–21.

she was "not 100% sure" in her identification. Id. M.C. also identified defendant's photograph as "who [M.C.] remember[ed] from yesterday" with 80% certainty. Id. at 10, 14.

### B. Attempted Robbery of Bank of American in Downey, January 24, 2019

On January 24, 2019, an attempted robbery occurred at the Bank of America branch on Imperial Highway in Downey, California. Mot. at 2; Dkt. 51-2, Exhibit B to Mot. ("Ex. B"), at 4. The suspect walked to M.G.'s teller window and said, "Robbery, hundreds and fifties. Don't make me start shooting." Ex. B at 4. When M.G. followed bank protocol and walked away from his window, the suspect left with no money. Id.

That same day, detectives from the Downey Police Department ("DPD") interviewed several witnesses. Id. at 4, 11, 12. Relevant here are M.G. and the operations manager, A.C.[3] When the attempted robbery occurred, A.C. was assisting a teller at the window adjacent to M.G. Id. at 12.

M.G. described the robber as an African American male, approximately six feet tall with thin build, 52 years old, and with a long face and "stubble growth." Id. at 4–5. A.C. gave a description consistent with M.G.'s, but made no mention of facial hair. Id. at 12.

DPD detectives presented M.G. and A.C. with the same photograph array as was used by the FBI in Gardena. Id. at 19. The DPD used a different admonition, though, which stated, in part, that "[t]he suspect who was involved in this crime may or may not be among these photographs. You are under no obligation to make an identification." Id. at 20. The DPD admonition made no reference to facial hair. Id.

M.G. identified defendant "due to facial features," but A.C. was unsure he would be able to identify the suspect, and selected none of the photographs in the lineup. Id. at 19, 21.

### C. Robbery of JP Morgan Chase in Gardena, January 24, 2019

On January 24, 2019, the JP Morgan Chase Bank on West Artesia Boulevard in Gardena, California, was robbed of $1,000. Mot. at 2; Dkt. 51-3, Exhibit C to Mot. ("Ex. C"), at 6. The suspect approached N.H., a bank teller, and said, "[T]his is a robbery. Give me all large bills. This is not a joke. I want all large bills or I'll start shooting." Ex. C at 9. When N.H. gave the suspect the money, she noticed the robber had tape on his fingers. Id.

---

[3] D.A., another teller, also provided a description relatively consistent with M.G.'s and A.C.'s, but apparently was not asked to identify a suspect. Ex. B at 12.

N.H. gave a description of the robber to the FBI in which she did not mention any facial hair. Id. at 10. She expressed concern that she would not be able to recognize the subject if she saw him again. Id. at 12.[4]

Nevertheless, the FBI presented N.H. with the same admonition and photograph array as were presented to Y.W. and M.C. in the previous JP Morgan Chase robbery. See id. at 3; Opp. at 7. When presented with the array, N.H. identified photograph number two as the suspected robber, not defendant, albeit with some hesitation. Ex. C at 2. (Photograph number two has a faint goatee. Id. at 3.) Defendant does not move to exclude N.H.'s identification testimony. See Mot. at 1.

### D. Robbery of International City Bank in Long Beach, January 28, 2019

On January 28, 2019, the International City Bank on East Ocean Boulevard in Long Beach, California, was robbed of $2,035. Mot. at 3; Exhibit D to Mot. ("Ex. D"), at 7. The suspect approached W.M., a bank teller, and stated, "This is a bank robbery. … I have a gun. I don't want to start shooting up the place." Ex. D at 6. Another teller, N.A., noticed the suspect leaning close and whispering to W.M. for at least five minutes. Id. at 12.

Later that day, the FBI interviewed W.M., N.A. and E.C., the security guard. Id. at 6, 10, 12. W.M. described the suspect as an African American male with "gray stubble—shadow," id. at 4; or, alternatively, "with a little bit of gray stubble on his face," id. at 7. W.M. also said the suspect was wearing a black Fedora hat and sunglasses. Id. at 5. Neither N.A. nor E.C. mentioned any facial hair. Id. at 10, 12. Neither believed he could identify the suspect. Id. at 11, 13.

That evening, Special Agent Clift, as well as Long Beach Police Department Detectives J.J. Johnson and Fermin Gonzalez, presented W.M. with the same admonition and photograph array as was presented in the JP Morgan Chase robberies.[5] Id. at 17–18. M.W. identified defendant because the "facial features match." Id. at 17. However, W.M. expressed some uncertainty, stating the photograph was "the closest to the man who robbed the bank." Id. at 17.

Defendant now argues that both the pre-trial photograph array identifications provided by Y.W., M.C., M.G. and W.M., and would-be in-court identifications, should be excluded as violations of the Fifth Amendment Due Process Clause and the Federal Rules of Evidence. Mot. at 1, 12. Having considered the parties' arguments, the Court finds and concludes as follows.

---

[4] A.R., another teller at the branch, also stated he would likely be unable to identify the suspect; the FBI apparently did not show a photograph lineup to A.R. Ex. C at 12.

[5] The parties' papers make no mention of whether N.A. or E.C. was asked to make an identification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES – GENERAL**                               'O'

### III.   LEGAL STANDARD

Courts conducts a two-step inquiry into the constitutionality of a pre-trial identification procedure. First, courts determine "whether the procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification." United States v. Givens, 767 F.2d 574, 581 (9th Cir. 1985) (citing Simmons v. United States, 390 U.S. 377, 384 (1968)). If so, courts then assess "whether it was nonetheless reliable." Givens, 767 F.2d at 581 (citing Manson v. Brathwaite, 432 U.S. 98, 107 (1977)).[6]

### IV.   DISCUSSION

Defendant's Fifth Amendment argument is twofold. First, he argues the content of the photograph array was suggestive because only defendant was clean-shaven. Mot. at 6. Second, defendant argues the presentation of the photograph array was impermissibly suggestive because the law enforcement personnel presenting the array knew which photograph was the defendant's, and because the photographs were presented simultaneously as opposed to sequentially. Id. at 7. The Court addresses each in turn.

#### A. Suggestiveness of Pre-Trial Photograph Array

Whether a pre-trial identification procedure is impermissibly suggestive depends on "the totality of the surrounding circumstances." United States v. Bagley, 772 F.2d 482, 492 (9th Cir. 1985) (citing Simmons, 390 U.S. at 384). "An identification procedure is suggestive when it 'emphasize[s] the focus upon a single individual.'" United States v. Montgomery, 150 F.3d 983, 992 (9th Cir. 1998) (quoting Bagley, 772 F.2d at 493) (alteration in original)); Simmons, 390 U.S. at 383. A photograph array in which the defendant is somehow unique can impermissibly emphasize the defendant. See United States v. Wade, 388 U.S. 218, 232–33 (1967) (citing as examples in-person lineup where defendant was only individual of Asian descent, in-person lineup where defendant was only individual with dark hair). Nevertheless, the Ninth Circuit has recognized that "[p]articipants in lineups are obviously going to differ in facial characteristics." United States v. Barron, 575 F.2d 752, 755 (9th Cir. 1978).

Here, defendant argues that the photograph array emphasized defendant because only he was depicted clean shaven. Mot. at 6. Because several witnesses described the suspect as cleanshaven, defendant argues this emphasis was impermissibly suggestive. Id. The government responds that, first of all, the admonition given to witnesses Y.W., M.C. and W.M. specifically

---

[6] Defendant also addresses a third step, namely whether the identification process was necessary. Mot. at 8. However, courts often fold this analysis into the first step. See, e.g., United States v. Montgomery, 150 F.3d 983, 992–93 (9th Cir. 1998). Here, the Court does the same.

warned them not to consider facial hair. Opp. at 10. Second, and more fundamentally, any differences in appearance were too slight to be impermissibly suggestive. Opp. at 11.

The Court finds that the photographs in the array are insufficiently distinct from defendant's to be impermissibly suggestive. For one, all of the images in the array are of African American men, of roughly the same age, with no head hair and little facial hair. Ex. A at 11; see United States v. Carbajal, 956 F.2d 924 (9th Cir. 1992) ("The photospread was not so impermissibly suggestive … [where] all six of the pictures in the photograph spread were of Hispanic males in the same age range, with similar skin, eye, and hair coloring"). And while defendant's is the only photograph depicted with no facial hair whatsoever, the most that can be said of the other photographs is that they depict men with slight facial hair or stubble—none have a full beard or mustache.[7] Ex. A at 11; See United States v. Collins, 559 F.2d 561, 563–64 (9th Cir. 1977), cert. denied, 434 U.S. 907 (1977) (photospread not unduly suggestive despite variances in age, hair style and facial hair); Livingston v. Small, No. CV 06-4033 SVW (FMO), 2009 WL 4980336, at *18 (C.D. Cal. Dec. 10, 2009) (photospread not impermissibly suggestive where defendant was only light-skinned African American and only person with shaved head). In fact, witnesses M.G. and W.M. described the suspect as having stubble. Ex. B at 4–5; Ex. D at 4, 7.[8]

Turning to defendant's argument that the manner in which the arrays were presented was impermissibly suggestive, defendant cites to persuasive authorities which have cautioned that a photograph array can be unduly suggestive when it is not double-blind, or when it is simultaneous as opposed to sequential. Hart v. Mannina, 798 F.3d 578, 588 n.1 (7th Cir. 2015), reh'g denied, (Oct. 6, 2015) ("Without the double-blind procedure, there is an avoidable risk that the administering officer will inadvertently provide cues to the witness before, during, or after the viewing." (citing sources)); United States v. Ford, 683 F.3d 761, 765 (7th Cir. 2012) ("Witnesses

---

[7] Photograph three has very faint stubble around the sides of his mouth, a faint patch under his lower lip, and perhaps a very faint, thin mustache. Photograph two could also be characterized as having stubble. Number five is clean shaven aside from a thin patch of dark hair running vertically on his chin. Numbers one and six have short goatees. Ex. A at 11.

[8] In its motion, defendant argued that the photograph array "revolved around Mr. Lewis" because it was "from a prior case that also focused on Mr. Lewis." Mot. at 8–9. At the Court's October 6, 2020 hearing, the government clarified that law enforcement created the photograph array based on witness descriptions from the first robbery at issue here, and that the FBI and DPD presented it to the witnesses of the subsequent robberies based on information that defendant was the perpetrator of those robberies, too. See Ex. A at 14 (array created January 22, 2019); Ex. B at 19. Regardless, defendant cites no authority to support the contention that presenting witnesses with a photograph array created in another case involving defendant renders it suggestive. See Mot. at 8–9. Furthermore, because the array is not suggestive, as discussed above, the manner in which it was constructed does not form a basis to exclude the identification evidence.

shown a sequential lineup are more likely to compare each person in it only with their memory of the offender, rather than choose whichever person looks the most like what the witness remembers."); Dkt. 51-5, Exhibit E to Mot. ("Ex. E"), at 13, 20–21. Defendant points to Y.W.'s statement that defendant's photograph was "the only one that stands out" and looked "the most like" the suspect, as well as W.M.'s similar statement that photograph four looked "the closest" to the suspect, as evidence that the presentation affected witnesses' identifications. Mot. at 7.

The Court recognizes that non-double–blind identification procedures, and simultaneous photograph lineups, are more likely to result in false identifications. Nevertheless, the presentation of the arrays at issue here was not impermissibly suggestive. First of all, courts routinely accept identifications based on simultaneous presentation of photographs, so that ground alone cannot render the array impermissibly suggestive. See, e.g., United States v. Love, 746 F.2d 477, 478 (9th Cir. 1984), (defendant "failed to indicate any way" in which photograph array was impermissibly suggestive); Livingston, No. CV 06-4033 SVW (FMO), 2009 WL 4980336, at *19 (photograph array not impermissibly suggestive). Second, law enforcement personnel admonished the witnesses that the suspect may not be pictured and that they should not feel compelled to identify any suspect from the pictures. See, e.g., Ex. A at 10. Finally, even if some subconscious influence was exerted on the witnesses, the Court finds that the identifications are nevertheless reliable, as discussed below.

### B. Reliability of Pre-Trial Photograph Array

Even if the Court were to find the photograph array was impermissibly suggestive, the pre-trial identifications would nevertheless be admissible if, under the totality of the circumstances, they were reliable. Neil v. Biggers, 409 U.S. 188, 199 (1972). The five factors sets forth in Biggers guide the court's assessment of pre-trial identifications' reliability: "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199–200.

#### 1. The Witness' Opportunity to View the Suspect at the Time of the Crime

Defendant argues that the witnesses had scant opportunity to view the suspect at the time of the robberies. Mot. at 10. However, caselaw establishes that the several minutes in which each witness observed the suspect, and their clear view of and propinquity to the suspect, tip in favor of reliability. See United States v. Drake, 543 F.3d 1080, 1088–89 (9th Cir. 2008) (identification reliable where witness stood "face to face" with robber for "less than one minute"); United States v. Gregory, 891 F.2d 732, 734–35 (9th Cir. 1989) (identification reliable where witnesses viewed robber "at close range for approximately 30 seconds"); United States v. Burnette, 698 F.2d 1038, 1046 (9th Cir. 1983) (identification reliable where witness "only viewed

the robber for approximately twelve seconds" and "his view was unobstructed and at close range").

### 2. The Witness's Degree of Attention Paid to the Suspect

Defendant argues that the second factor weighs against reliability, suggesting that "[t]he bank tellers who were the alleged victims of the robberies certainly were focused more on deescalating the situation and preventing harm to themselves and others than studying the suspect's appearance," and that "[t]he other bank employees that only observed the suspect from afar had no reason to believe that anything was out of the ordinary until after the suspect left the bank." Mot. at 10.

The Court disagrees. First, the witness-tellers who were themselves approached by defendant, namely Y.M., N.H. and W.M., knew the suspect was robbing the bank, and there is little question that they therefore paid a high degree of attention. See United States v. Valenzuela, 722 F.2d 1431, 1433 (9th Cir. 1983) (bank teller "was attentive as she was the subject of the robbery"); United States v. Barrett, 703 F.2d 1076, 1085 (9th Cir. 1983) (as "the target of the robbery," bank teller's "degree of attention was undoubtedly high"). And M.C., who noticed the suspect hurrying Y.M. and telling her to "quit playing," also had reason to pay close attention to the suspect. Ex. A at 5; see United States v. Hammond, 666 F.2d 435, 440 (9th Cir. 1982) (bank teller had high degree of attention where suspect "looked around as though he were trying to determine how many employees were on duty, and generally acted in [] a suspicious manner"). The second Biggers factor weighs in favor of reliability.

### 3. The Accuracy of the Witness' Prior Description of the Suspect

The third Biggers factor also tends toward reliability. Defendant argues that it does not, suggesting that two of the witnesses equivocated in their identifications, and that "the similarity between the witness descriptions and the chosen photograph could just as easily be attributable to the suggestive nature of the lineup as to the reliability of their identification." Mot. at 10. But this argument conflates accuracy with the fourth Biggers factor—the degree of certainty—and misstates which descriptions must be accurate. The third Biggers factor asks whether the *prior* descriptions—provided before seeing the photograph array—accurately describe the defendant. Biggers, 409 U.S. at 200.

The Court finds that the witnesses' initial descriptions did accurately describe defendant. Before seeing the photograph array, the witnesses in question described the suspect as an African American male, with a slim build, somewhere between 40 and 60 years old and roughly six feet tall. Opp. at 16. The witnesses also accurately described the suspects' clothes. Nothing in the record suggests that defendant does not fit this description. The witnesses' descriptions are therefore sufficiently accurate to tip the third Biggers factor toward reliability. See Bolini v. Small, No. CV 10-4018-GAF(E), 2011 WL 1599599, *9 (C.D. Cal. 2011) (description accurate

despite describing white offender as having "dark skin," and misidentifying defendant as having worn head covering).

### 4. The Witness' Level of Certainty at the Time of the Confrontation

Turning to the fourth Biggers factor, defendant argues that both Y.W. and W.M. equivocated in their identifications, and that "it is unknown how certain the other witnesses were in their identification[s]." Mot. at 10. Defendant further notes that it is unclear "how long the witnesses reviewed the lineup" before identifying defendant's photograph, and the record does not reflect what was said during the identification procedures. Mot. at 10. The government responds that, although Y.W. and W.M. hedged their identifications somewhat, both were more sure than unsure. Opp. at 16.

The degree of certainty does not undermine reliability. It is true that Y.W. stated defendant was "the only one who stands out," and that "number four definitely looks the most like the bank robber yesterday." Ex. A at 17, 19. She further noted that she was "not 100% sure" in her identification. Id. at 17, 19. Similarly, W.M. stated photograph number four was "the closest to the man who robbed the bank." Ex. D at 17. Finally, M.C. identified defendant with 80% certainty. Ex. A at 10, 14. But these qualifications do not render the identifications unreliable. Hammond, 666 F.2d at 440 (level of certainty "sufficiently high to provide reasonable assurances of reliability" despite witness' statement "I think I thought I knew that was the man that robbed us").

### 5. The Length of Time Between the Crime and the Confrontation

Defendant concedes the final Biggers factor does not weigh against reliability because the witnesses were presented with the photograph array at most one day after the robbery. Mot. at 10; see Hammond, 666 F.2d at 440 ("[T]he lapse of a week is not long enough to indicate clear unreliability." (citation omitted)).

Accordingly, having already found the photograph array was not impermissibly suggestive, the Court also finds that the pre-trial identifications were reliable under Biggers. For these two reasons, the pre-trial identifications are admissible. To the extent defendant believes "some element of untrustworthiness" colors this evidence, "such evidence is for the jury to weigh." Manson, 432 U.S. at 116.

### C. Preclusion of In-Court Identifications

Defendant also seeks to exclude in-person identification of defendant by Y.W., M.C., M.G. and W.M. on the ground that their testimony would have been irreparably tainted by the suggestive photograph array. Mot. at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES – GENERAL**                                     'O'

Pre-trial photograph identifications may "taint subsequent in-court identifications," Bagley, 772 F.2d at 492; Coleman v. Alabama, 399 U.S. 1, 5 (1970), but "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," Simmons, 390 U.S. at 384. Because the Court finds that the pre-trial photograph arrays were not impermissibly suggestive nor unreliable, it therefore follows that in-court identifications are not precluded.

As with the pre-trial identifications, the in-court identifications are "for the jury to weigh." Manson, 432 U.S. at 116.

### D. Rules of Evidence

Defendant's second argument for the exclusion of identification testimony is that, even if the identification procedures do not rise to a due process violation, they violate Federal Rules of Evidence 403, 602 and 701. Mot. at 12.

As to Rule 602, defendant argues without explanation that the identifications cannot be introduced because Rule 602 insists on the introduction of only "the most reliable sources of information." Mot. at 12; Fed. R. Evid. 602 advisory committee's note to 1972 proposed rule. He also mentions Rule 701 in passing, ostensibly arguing that the witness identifications are opinion testimony that is not based on the witnesses' perceptions. Mot. at 12; Fed. R. Evid. 701(a). But the Court has already found the identifications to be reliable for the reasons discussed above. In addition, with regard to Rule 701, eyewitness identification is permissible "where it is based upon personal observation and recollection of concrete facts," as is the case here. United States v. Beck, 418 F.3d 1008, 1015 (9th Cir. 2005) (quotation omitted), see United States v. Gadson, 763 F.3d 1189, 1209 (9th Cir. 2014) ("Under Rule 701, … [c]ourts regularly admit lay opinion testimony regarding the identity of a person in a photograph." (citation omitted)).

As to Rule 403, defendant argues that the identification testimony should be excluded because the danger of unfair prejudice and misleading the jury substantially outweighs its probative value. Mot. at 12; Fed. R. Evid. 403. Specifically, defendant argues that, for one, the identifications' probative value is undermined by their unreliability, and, two, they are prejudicial because juries tend to heavily weight witness identifications. Mot. at 12 (citing Tanja R. Benton et al., Eyewitness Memory is Still Not Common Sense: Comparing Jurors, Judges and Law Enforcement to Eyewitness Experts, 20 Applied Cognitive Psychol. 115, 120 (2006)). But, as detailed above, the identifications are not unreliable. Furthermore, while pre-trial and in-court identifications are certainly prejudicial, they are not "unfairly" prejudicial, and their admission does not violate Rule 403. See United States v. Haischer, 780 F.3d 1277, 1282 (9th Cir. 2015) ("Application of Rule 403 must be cautious and sparing because the Rule's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (quotation and alteration omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES – GENERAL**                     'O'

### E. Evidentiary Hearing

Finally, the government argues that no evidentiary hearing should be held regarding the identification testimony at issue here. Opp. at 18. Because there is no indication that the pre-trial photograph arrays were impermissibly suggestive or unreliable, the Court agrees and finds the weight of the evidence should be determined by the jury. See Watkins v. Sowders, 449 U.S. 341, 348–39 (1981) (Constitution does not require hearing to determine admissibility of identification evidence); United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir. 1985) (applying Watkins).

### V. CONCLUSION

For the foregoing reasons, defendant's motion to exclude pre-trial and in-court identification testimony is **DENIED**.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Deputy Clerk | CMJ |